## BOAG v. WOODWARD.

A landlord, having a first lien on the crop to be made by his tenant, endorsed on a subsequent lien for supplies, given by this tenant to a merchant, as follows: "I hereby waive my landlord's lien for rent to the extent of $75, reserving the right to give or take the first bale weighing 400 lbs., and bale about afterwards." The tenant made only three bales. The landlord took the first, the merchant the second, and both claimed the third. *Held*, that the waiver, construed as a whole, meant that the landlord would·not claim his lien in its entire priority, but would yield to the merchant the second and every other alternate bale until the merchant was paid $75; and, therefore, that the landlord was entitled to this third and last bale.

Before NORTON, J., Fairfield, February, 1890.

This was a contest between J. O. Boag and T. W. Woodward & Co. over a bale of cotton. The judgment of the Circuit Court, sustaining that of the trial justice, was as follows:

If the intention of the parties can be gathered from the words used, then no resort can be had to any other rule of construction. I confess my inability to say with certainty what the parties mean by the words used. In fact, they are unintelligible or contradictory, unless ellipses be supplied. The parties meant something which they thought they had agreed upon, and upon the faith of which Woodward & Co. have acted. If the waiver were void for uncertainty, they would lose their goods, parted with on the faith of it. Boag's construction would make the paper read: "I waive my rent lien on the second, and afterwards on every alternate, bale raised by Sam. Jones, until Woodward & Co. have been paid seventy-five dollars on their lien for supplies." Woodward & Co.'s contention would make the paper read: "I waive my rent lien on Sam. Jones's crop until Woodward & Co. shall have been paid their lien thereon of seventy-five dollars for supplies, reserving the right to take (if not needed to pay Woodward & Co.) the

first, and thereafter every alternate, bale on my lien." The words failing to make the construction plain, it is adjudged, from the circumstances surrounding the parties, that the judgment of the trial justice be affirmed.

We may presume, from the statutory lien given to landlords, that the usual rent is one third of the crop, and that the rent reserved was the estimated one-third of the crop to be raised by Sam. Jones; that the value of cotton was 9 10-100 cents per pound, which would require, in round numbers, two 400-pound bales to pay the lien of Woodward & Co. It was, therefore, contemplated by Boag and Sam. Jones, that Sam. Jones would make nine bales; that five bales would pay Boag and Woodward & Co. both. Woodward & Co. were unwilling to risk the second lien on the crop. There was a probability that Boag would need money at the time the first bale should be gathered; the parties could then pretty safely estimate the crop, and Woodward & Co. were not particular as to the order of payment. Boag had confidence enough in Jones to rent to him; without supplies he could make no crop; without a waiver, he could not get supplies.

I agree with the trial justice, that the circumstances make the proviso relate more probably to the order of payment than to a reduction of the amount of the waiver. The conduct of the parties is consistent with this view. Rabb testifies that he looked at the crop, saw there was enough to allow Boag to have the first bale, and leave enough to pay Woodward & Co.; and he allowed Boag to take the first bale, because it was so provided in the writing, and this was true, whichever interpretation we give the paper.

Again, where there is an irreconcilable contradiction between the first part of a deed and the last part, the first part is to be operative rather than the last part. The first part must be taken here. Again, where a party speaks, especially where he writes the paper through which he speaks, the paper, being otherwise doubtful, is construed in favor of the other party. Mrs. Boag, the agent of Boag, wrote and signed the paper for him; and for this reason, also, the judgment of the trial justice is affirmed and made the judgment of this court.

J. O. Boag appealed upon several exceptions, which contested

the construction put by the Circuit Judge upon this waiver, and the grounds of such construction.

*Mr. Chas. A. Douglass*, for appellant.

*Messrs. Ragsdale & Ragsdale*, contra.

July 2, 1890.  The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON.  The plaintiff, appellant, leased a certain portion of land, situate in Fairfield County, to one Sam. Jones, having a landlord's lien for the rent.  Jones, with the view to make a crop, applied to the defendants, respondents, for advances, who consented to make said advances to the extent of $75.  Before doing so, however, they obtained from the landlord, the plaintiff herein, an endorsement on the lien contract as follows, to wit: "I hereby waive my landlord's lien for rent to the extent of seventy-five dollars, reserving the right to give or take the first bale weighing 400 pounds, and bale about afterwards. (Signed) J. O. Boag."  The rent of the landlord was 3 bags of cotton, and when the crop was being gathered, he took the first bag and the defendants the second.  The third, being the last and all grown by the tenant, was seized by the defendants under a warrant issued by a trial justice, upon the agricultural lien executed by the said Sam. Jones to said defendants for the supplies referred to above.  At this point, the landlord intervened and claimed this last bale.  The trial justice held that the landlord, by the endorsement above upon defendants' agricultural lien, had waived his prior right for the rent, and he decreed for the defendants.  Upon appeal to the Circuit Court, the judgment of the trial justice was affirmed.  And now the appeal to this court contests the correctness of the judgment of the Circuit Court. The appeal is based upon several exceptions (found in the "Case"); they raise, however, but a single question, and that is the proper construction of the endorsement referred to.

At the time of this endorsement, it was doubtless well understood that the landlord had the prior lien for three bales of cotton, the stipulated rent, and it was, no doubt, supposed that the tenant would be able to pay from his crop both the rent and the

amount to be advanced by the defendants, and the matter which was intended to be arranged was the order in which these two claims should be paid. We suppose this was the object of the paper, from what was said both by the plaintiff and Mr. Rabb, of the firm of the defendants, in their testimony. The plaintiff said: "Mr. Rabb was in the store once, and asked if he could not get the first bale; said that it would throw him late in getting his money. I replied, that it would throw me late if he got the first bale, and I thought they could stand it as well as I could." And Mr. Rabb, in his testimony, said: "Mr. Boag and Mrs. Boag both wanted the reservation which is in the lien. That is the only time I asked Mr. Boag about the first bale of cotton. Mr. Boag said that he might yield that in the fall, but that he pre-. ferred not to do so on the lien ; that he might be pressed for funds in the fall." So that it is pretty clear that both parties expected to be paid in full, and, therefore, the object in having an understanding was not which should lose in the event that there was a deficiency in the crop, but in what order they should be paid.

But, independent of this, we think the paper itself, when examined under the rule, that the language used therein must determine its meaning if possible, leads to the same conclusion. It is true, the paper at the first blush seems somewhat contradictory. It would appear from the first sentence, when detached, that the landlord intended to waive his entire lien to the full extent of the defendants' claim, to wit, $75 ; in other words, that the defendants should be paid first, the landlord taking the risk of getting the rent out of the remainder of the crop. But when this waiver is followed immediately by the sentence, that the landlord "reserved the right to give or take the first bale, and then bale about afterwards," it is apparent, as it seems to us, that the parties could not have understood that the landlord had waived his entire lien until the defendants were paid in full. For if that was the understanding, why reserve the right to take the first bale and alternate as to the remainder? No, the whole paper must be construed together and as a whole, and must be construed under the light of the fact, that the landlord had not only the first lien, but the right to enforce that lien out of the first gathered portion of the crop.

When thus construed, we think it means that the landlord waived his right to enforce his entire lien first, and consented to enforce it on alternate bales, he taking the first and the defendants the second, and so to continue until both were paid. This construction harmonizes the seeming conflict in the paper when examined in detached portions, and certainly makes it a more reasonable instrument when thus examined. If the parties intended that the landlord should only waive his right to enforce his lien in full at first and to allow the defendants to come in with the landlord, the paper in question would have carried out that object; but if they intended that the defendants should be put ahead entirely, and should be paid in full before any of the rent was paid, then why the reservation? We think the agreement was, that the landlord gave up his right to be paid first, and consented that both parties should be paid by alternate bales, the landlord taking the first; and as the bale in question is the third in order, the two first having been taken by the parties according to this rule, it belongs to the landlord, and such should have been the judgment below.

It is the judgment of this court, that the judgment of the Circuit Court be reversed. Let the case be remanded.